**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **Criminal No. 12-46 (CKK)** |
| TARIK BUTLER, | **Civil Action No. 16-1187 (CKK)** |
| Defendant. | |

**MEMORANDUM OPINION**
(May 25, 2017)

Presently before the Court are Defendant Tarik Butler's [31] Revised Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, and Mr. Butler's [33] Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255. Upon a searching review of the parties' submissions,[1] the relevant authorities, and the record as a whole, the Court finds that Mr. Butler no longer qualifies for a sentencing enhancement pursuant to the Armed Career Criminal Act based on his prior criminal convictions in light of the Supreme Court of the United States' holding in *Johnson v. United States*, -- U.S. --, 135 S. Ct. 2551 (2015). Accordingly, the Court shall GRANT Mr. Butler's [31] Revised Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, and Mr. Butler's [33] Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255, and set this matter for a resentencing.

---

[1] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents: Def.'s Revised Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Def.'s Mot."), ECF No. [31]; Def.'s Supp. Mot. to Vacate Judgment Under 28 U.S.C. § 2255 ("Def.'s Supp. Mot."), ECF No. [33]; Govt.'s Opp'n to Def.'s Mot. & Supp. Mot. to Vacate Judgment Under 28 U.S.C. § 2255 ("Govt.'s Opp'n"), ECF No. [37]; Def.'s Reply Mem. in Supp. of Mot. & Supp. Mot. to Vacate Judgment Under 28 U.S.C. § 2255 ("Def.'s Reply"), ECF No. [42].

# I. BACKGROUND

On February 23, 2012, an indictment was filed charging Mr. Butler with unlawful distribution of 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). Mr. Butler was arrested on February 28, 2012. On June 25, 2012, an information was filed charging unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e)(1). On that same day, Mr. Butler pled guilty to the sole count of the indictment, unlawful distribution of 28 grams or more of cocaine base, and the sole count of the information, unlawful possession of a firearm, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). As part of the plea agreement, Mr. Butler acknowledged that "unlawful possession of a firearm carries a penalty of imprisonment of not less than 15 years." Plea Agmt. at 1. Further, as part of the terms of the 11(c)(1)(C) plea, the parties agreed that a 180-month (15-year) term of imprisonment was the appropriate sentence which the Court accepted.

This matter proceeded to sentencing on October 10, 2012. At that time, a person convicted of a § 922(g) violation who also had three prior convictions for a "violent felony" or "serious drug offense" was subject to a 15-year mandatory minimum pursuant to the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924(e)(1) (2012). Further, a "violent felony" was defined as any crime punishable by a term of imprisonment exceeding one year that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another;" (2) "is burglary, arson, or extortion, [or] involves use of explosives;" or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B). Generally, these clauses are known respectively as the "elements clause,"[2] the "enumerated clause," and the

---

[2] The United States Court of Appeals for the District of Columbia Circuit also has referred to the "elements clause" as the "force clause." *See United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016).

"residual clause." *United States v. Redrick*, 841 F.3d 478, 480 & n.3 (D.C. Cir. 2016). Further, at the time of sentencing, United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(a)(2) provided a sentencing enhancement for a defendant who had "at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2) (2012). Further, U.S.S.G. § 4B1.2(a) provided a sentencing enhancement for a person classified as a Career Offender, meaning a person whose present conviction was one for a "crime of violence" or "controlled substance offense," and had two prior felony convictions for such offenses. A "crime of violence" was defined for both guideline provisions in materially the same manner as "violent felony" discussed above. *See* § 2K2.1(a)(2), comment. n.1; U.S.S.G. § 4B1.2(a).

The Court sentenced Mr. Butler to a term of imprisonment of 15 years (180 months), in accordance with the Rule 11(c)(1)(C) plea agreement, on both counts followed by a term of supervised release of 5 years (60 months). In imposing this sentence, the Court found that Mr. Butler was subject to a 15-year mandatory minimum in light of his prior convictions. Judg. in Cr. Case, Stmt. of Reasons at 1; Sent'g Hrg. Tr. (Oct. 10, 2012), at 3:10-13, ECF No. [29] ("He also pled to Count 1 of an Information, which was unlawful possession of a firearm by a felon with three convictions. And that has a statutory 15-year mandatory minimum to life with a maximum fine of $250,000."). Specifically, Mr. Butler had: a 1995 conviction for attempted distribution of cocaine in the District of Columbia, PSR ¶ 41, ECF No, [17]; and two 2000 convictions for assault with a dangerous weapon in the District of Columbia, *id.* ¶¶ 44, 45.[3] *See* Sent'g Hrg. Tr. (Oct. 10,

---

[3] While the PSR and the Court did not specifically indicate which three of Mr. Butler's prior convictions were relied on in imposing the mandatory minimum, both parties assume that the three convictions listed above underlie the imposition of the 15-year mandatory minimum. The Court accepts this assumption as conceded and also because, as the government points out, "the PSR identified each of those convictions as a 'qualifying conviction under USSG §§ 4B1.11 and 4B1.4(a),'" Govt.'s Opp'n at 4 n.4, and, as Mr. Butler points out, these three prior convictions were specifically referenced by the Court during the plea hearing in this matter, Def.'s Supp. Mot.

3

2012), at 9:1-15. As reflected in the Presentence Investigation Report, Mr. Butler was subject to a mandatory minimum term of imprisonment of 15 years pursuant to the ACCA, 18 U.S.C. § 924(e)(1). PSR ¶ 107. Further, the Court applied U.S.S.G. §§ 2K2.1(a)(2) (increased base level offense based on two prior felony convictions for a crime of violence or controlled substance offense) and 4B1.4 (Armed Career Criminal enhancement) in calculating Mr. Butler's sentencing range under the U.S.S.G. *Id.* ¶¶ 27, 37; Sent'g Hrg. Tr. (Oct. 10, 2012), at 5:3-6 (adopting the PSR as written). Mr. Butler did not appeal his conviction or sentence.

On June 26, 2015, the Supreme Court of the United States ("Supreme Court") in *Johnson v. United States*, -- U.S. --, 135 S. Ct. 2551 (2015), held that the residual clause of the ACCA, § 924(e)(2)(B)(ii), is unconstitutionally vague. *Id*. at 2563. On April 18, 2016, the Supreme Court held in *Welch v. United States*, -- U.S. --, 136 S. Ct. 1257 (2016), that its decision in *Johnson* announced a substantive rule that has a retroactive effect in cases on collateral review. *Id.* at 1268. In light of these holdings, on June 2, 2016, Chief Judge Beryl A. Howell issued a Standing Order "appoint[ing] the Office of the Federal Public Defender for the District of Columbia to represent any defendant previously determined to have been entitled to appointment of counsel, or who is now indigent, to determine whether that defendant may qualify to seek to vacate a conviction or to seek a reduction of sentence or to present any motions to vacate a conviction and/or for reduction of sentence in accordance with *Johnson* and *Welch*." Pursuant to the procedures set out in that Standing Order, Mr. Butler, through counsel, filed an abridged [31] Motion Under 28 U.S.C. §§ 2255 to Vacate, Set Aside, or Correct Sentence on June 24, 2016. The motion currently is pending before this Court and further briefing on this motion was made in accordance with Chief Judge Howell's Standing Orders of June 2, 2016, and September 9, 2016, and subsequent order of this

---

at 4. *See* Plea Hr'g Tr. (June 25, 2012), at 19:10-24, ECF No. [33-1].

Court. Mr. Butler argues that two of his prior convictions no longer qualify as violent felonies under the ACCA or crimes of violence under U.S.S.G. § 2K2.1(a)(2) in light of the Supreme Court's holding in *Johnson* and, as such, requests that the Court correct his sentence. *See generally* Def.'s Supp. Mot.

With respect specifically to Mr. Butler's arguments regarding the applicability of certain provisions of the U.S.S.G., the Court notes that the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") extended the reasoning of *Johnson* to the U.S.S.G., finding that the similarly worded residual clause of U.S.S.G. § 4B1.2(b) also is unconstitutional under the void-for-vagueness doctrine. *United States v. Sheffield*, 832 F.3d 296, 312-13 (D.C. Cir. 2016). However, after briefing was complete on the instant motion, the Supreme Court in *Beckles v. United States*, -- U.S. --, 137 S. Ct. 886 (2017), held that the residual clause of U.S.S.G. § 4B1.2(a)(2) is not void for vagueness because the U.S.S.G. are not subject to a vagueness challenges under the due process clause. *Id.* at 890. The Supreme Court noted that its holding did not render the U.S.S.G. immune from constitutional scrutiny, including scrutiny under the due process clause. *Id.* at 895-96. Rather, the majority opinion of the Supreme Court held specifically that the void-for-vagueness doctrine was inapplicable to the advisory U.S.S.G. *Id.* at 896. The Supreme Court explained: "Unlike the ACCA, . . . the advisory Guidelines do not fix the permissible range of sentences. To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* at 892.

Given that *Beckles* was decided after the instant motion was briefed, neither party has discussed the import, if any, of the Supreme Court's decision in *Beckles* to Mr. Butler's conviction and sentence. The Court has determined that it need not reach this issue of the applicability of the U.S.S.G. at this juncture. Rather, the Court's analysis shall focus on whether Mr. Butler's prior

offenses constitute violent felonies under the ACCA. For the reasons described below, the Court finds that Mr. Butler was improperly sentenced to a mandatory minimum sentence under the ACCA and, accordingly, must be resentenced. As such, the Court shall allow the parties to make any arguments regarding the applicability of the U.S.S.G. in their memorandums in aid of sentencing prior to resentencing.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

# III. DISCUSSION

A. Procedural Requirements

The Government first argues that Mr. Butler's claims are not properly before this Court for several reasons. Generally, a criminal defendant may bring a § 2255 within one year of the date upon which his or her judgment of conviction becomes final or within one year of certain other events which essentially reset the clock on the one-year period. *See generally* 28 U.S.C. § 2255(f). In relevant part, section 2255 provides that a motion brought under this section may be brought within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3). It is undisputed that the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson* (2015)") declaring the residual clause of the ACCA unconstitutional was a newly recognized right made retroactively applicable to cases on collateral review. *Welch*, 136 S. Ct. at 1268. It also is undisputed that Mr. Butler timely raised any claims made under *Johnson* (2015) pursuant to the procedures set forth in this jurisdiction by Chief Judge Howell. However, the Government asserts that Mr. Butler's claims nevertheless fail because: (1) this Court did not actually rely on the residual clause of the ACCA when sentencing Mr. Butler; (2) Mr. Butler claims are untimely because his argument does not rely on the Supreme Court's decision in *Johnson* (2015), but rather on an earlier-decided Supreme Court case; and (3) Mr. Butler's claim is procedurally defaulted because he has not demonstrated cause and prejudice for his failure to raise these claims on direct appeal. The Court shall address each argument in turn.

1. *This Court's Reliance on the Residual Clause at Sentencing*

First, the Government asserts that Mr. Butler has not demonstrated that this Court actually

relied on the residual clause of the ACCA with respect to Mr. Butler's prior convictions. While it is true that the record in this case does not conclusively show that the Court relied on the *residual clause* of the ACCA rather than the elements clause at the time of sentencing, this does not bar Mr. Butler's claim. First, the Court does not accept the Government's premise that a criminal defendant must make an affirmative showing that the sentencing court relied on the residual clause rather than the alternative elements clause of the ACCA in order to assert a claim under *Johnson* (2015). Indeed, this Court accepts the proposition, as recognized by other district courts in this jurisdiction and courts of other jurisdictions, that it is sufficient for a criminal defendant to show that a sentencing judge might have relied on the residual clause in order to proceed. *See United States v. Wilson*, No. CR 96-0157 (ESH), 2017 WL 1383644, at *3 (D.D.C. Apr. 18, 2017) (Huvelle, J.) (collecting cases).

As District Judge Paul L. Friedman recognized, to hold otherwise would create an "absurd result." *United States v. Booker*, No. CR 04-0049 (PLF), 2017 WL 829094, at *4 (D.D.C. Mar. 2, 2017). At the time of Mr. Butler's sentencing, a court was not required to specify which clause it was relying on to find that the particular offenses qualified as violent felonies under the ACCA and U.S.S.G. *Id.* at *3. Nor is it likely that a sentencing judge would have seen the need to make such a specification several years (in this case, approximately two and a half years) before the Supreme Court declared the residual clause unconstitutional. Further, prior convictions that did not meet the requirements of the elements clause often satisfied the residual clause. *Id.* As such, to impose the restriction advanced by the Government, certain criminal defendants would be barred from raising an otherwise cognizable claim under *Johnson* (2015) because the sentencing judge did not specify which clause she was relying on at a time when that was not required and it could not have been foreseen that such a specification was necessary. As such, the Court accepts

that Mr. Butler must show only that this Court may have relied on the residual clause in order to proceed.

As a practical matter, it is clear from the record that the Court imposed the 15-year term of imprisonment as a mandatory minimum in light of the prior convictions in accepting the Rule 11(c)(1)(C) plea agreement as to the sentence. As discussed further below, the Court considered two of Mr. Butler's prior offenses as "violent felonies" under the ACCA. The Court did not specify in reaching this determination whether it was relying on the elements clause or the unconstitutional residual clause. As such, the Court has determined this is a sufficient showing in order for Mr. Butler's claims under *Johnson* (2015) to proceed.

### 2. *Timeliness of Mr. Butler's Claims*

The Government next argues that Mr. Butler's claims are untimely because the claims actually are based on the Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson* (2010)"), not *Johnson* (2015), and, as such, should have been raised within one year of the former decision. In *Johnson* (2010), the Supreme Court held that the term "physical force" as included in the elements clause of the ACCA means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson* (2010), 559 U.S. at 140. As discussed above, in *Johnson* (2015), the Supreme Court found the residual clause of the ACCA unconstitutional.

Here, the Government is correct that Mr. Butler relies in part on the Supreme Court's decision in *Johnson* (2010) in his argument that his D.C. assault with a dangerous weapon convictions do not qualify as "violent felonies" under the elements clause of the ACCA or "crimes of violence" under the U.S.S.G. in light of the definition of "physical force." However, Mr. Butler advances this argument because those convictions cannot qualify as "violent felonies" under the

residual clause in light of the Supreme Court's decision in *Johnson* (2015). Indeed, "'[i]t is only as a result of 2015 *Johnson*'s voiding of the residual clause that [defendant] could reasonably argue that he is no longer eligible for the ACCA enhancement.'" *Wilson*, 2017 WL 1383644, at *4 (quoting *Diaz v. United States*, No. 1:11-cr-0381, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016)). Accordingly, the Court finds that Mr. Butler's arguments are sufficiently based on the right that was newly recognized by the Supreme Court in *Johnson* (2015) and, because the motion was filed within one year of that decision, the claims were timely raised.

### 3. *Procedural Default*

The Government argues that Mr. Butler's claims are barred by the procedural default rule which "generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). "The procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Here, it is undisputed that Mr. Butler did not previously raise his claims. However, Mr. Butler asserts that he has demonstrated cause and prejudice sufficient to overcome the procedural default rule. Further, Mr. Butler notes he is not requesting that the Court vacate his conviction, but rather that the Court simply correct his sentence. The Government asserts that Mr. Butler has procedurally defaulted his claims because: (1) he agreed as part of the plea that he would likely be considered an Armed Career Criminal and agreed at sentencing that the prior convictions were "violent felonies"; and (2) he failed to argue before this Court or on appeal that the residual clause was unconstitutionally vague or that his prior convictions would not satisfy the requirements of

the elements clause. While the Government raises each of these arguments, it only fleshes out its argument that Mr. Butler should have raised his *Johnson* (2010) claims regarding the definition of a violent felony under the elements clause either before this Court or on direct appeal because these claims were not so novel at the time of sentencing that their legal basis was not reasonably available. Indeed, the Government's position is that Mr. Butler has not demonstrated "cause" for failing to raise those arguments before this time. *See* Govt.'s Opp'n at 12-13. The Court finds that Mr. Butler has not procedurally defaulted his claims for the reasons described herein.

As an initial matter, the Court emphasizes that Mr. Butler's failure to raise his claims related to the elements clause of the ACCA can only be considered in the context of the timing of Mr. Butler's plea and sentencing, when the residual clause was available as an alternative basis to find that a particular conviction qualified under the ACCA. The Court rejects the Government's position that the Court must consider whether Mr. Butler made an argument that his prior convictions did not qualify under the elements clause when the residual clause had not yet been declared unconstitutional. As such, the issue before the Court is whether Mr. Butler can demonstrate cause and prejudice for failing to argue that his prior two prior convictions were not "violent felonies" under *either* the elements clause or the residual clause at the time of his plea and sentencing or on direct appeal.

Turning first to the issue of cause, the Supreme Court explained that "'futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)). However, "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default.'" *Id.* at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). First, as the D.C. Circuit noted, "it is fair to say that no one—the government,

the judge, or . . . [the defendant]—could reasonably have anticipated *Johnson* [(2015)]." *Redrick*, 841 F.3d at 480. Indeed, on two separate occasions following Mr. Butler's sentencing, the Supreme Court upheld the constitutionality of the ACCA's residual clause before ultimately finding it void for vagueness in *Johnson* (2015). *See generally Sykes v. United States*, 564 U.S. 1 (2011); *James v. United States*, 550 U.S. 192 (2007). Moreover, the Supreme Court has unequivocally announced that the rule in *Johnson* (2015) is applicable retroactively on collateral review. The Court agrees with other district courts in this jurisdiction that until the Supreme Court's decision in *Johnson* (2015), there was no reasonable basis to challenge the constitutionality of the residual clause and this is sufficient to establish cause. *See Booker*, 2017 WL 829094, at *5 (Friedman, J.); *United States v. Brown*, No. CR 09-358 (EGS), 2017 WL 1383640, at *4 (D.D.C. Apr. 12, 2017) (Sullivan, J.); *Wilson*, 2017 WL 1383644, at *3 (Huvelle, J.).

Turning next to the issue of prejudice, a defendant must show that "'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'" *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)). Here, Mr. Butler asserts that he was improperly subjected to a 15-year mandatory minimum sentence under the ACCA that, in light of the Supreme Court's holding in *Johnson* (2015), is not applicable to him. Certainly, if Mr. Butler's claims have merit, he has sufficiently demonstrated that he was prejudiced by being improperly sentenced to a mandatory minimum term of imprisonment. The Court finds this is sufficient to establish prejudice for the purposes of the procedural default rule. However, whether Mr. Butler was actually prejudiced requires a review of the merits of his claims.

### B. Merits of Mr. Butler's § 2255

Here, Mr. Butler argues that he no longer qualifies for an enhanced sentence under the

ACCA in light of the Supreme Court's holding in *Johnson* (2015). The record in this case does not clarify which clause of the ACCA this Court relied on in applying the 15-year mandatory minimum. As previously mentioned, the Court considered three of Mr. Butler's prior convictions: a D.C. conviction for attempted distribution of cocaine; and two D.C. convictions for assault with a dangerous weapon ("D.C. ADW"). Mr. Butler concedes that his conviction in D.C. for the attempted distribution of cocaine qualifies as a "serious drug offense." *See* Def.'s Supp. Mot. at 28. As such, in light of the Supreme Court's ruling that the residual clause is unconstitutionally vague, the question before the Court is whether Mr. Butler's two other prior convictions for D.C. ADW are "violent felonies" under either the elements clause or the enumerated clause. The parties agree that this offense is not included in the enumerated clause. However, the parties disagree as to whether these convictions qualify as violent felonies under the elements clause. Mr. Butler argues that the prior convictions do not qualify as such and, accordingly, requests that the Court correct his sentence to reflect that he does not have three qualifying prior convictions to be sentenced under the ACCA 15-year mandatory minimum. The Government argues that Mr. Butler's sentence is correct because both prior convictions qualify as violent felonies under the elements clause.

The elements clause, codified at § 924(e)(2)(B)(i), defines a qualifying offense as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." The provision does not define "physical force." However, the Supreme Court has clarified that in this context "physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson* (2010), 559 U.S. at 140.

In determining whether a particular offense fits within this definition, the Court must apply

the "categorical approach."[4]  The categorical approach requires the Court to look *only* at the statutory definition of a particular prior offense and *not* at the particular facts underlying the convictions.  *Descamps v. United States*, -- U.S. --, 133 S. Ct. 2276, 2283 (2013).  As the D.C. Circuit explained:

> [I]n asking whether a prior crime qualifies as a violent felony, we look at the state or federal statute under which a defendant has been convicted and ask simply whether the *elements* of the prior crime meet the Act's definitions of a violent felony. If a prior conviction is based on a statute that sweeps more broadly than this federal definition—let us say, a conviction could be based on a minor battery—such a conviction cannot qualify as a violent felony under the force [or elements] clause.

*Redrick*, 841 F.3d at 482.  In sum, the Court must employ a two-step process.  First, the Court must determine the elements of the state law offense at issue.  Second, the Court must determine whether the force required to commit the state law offense is equivalent to the force required by § 924(e)(2)(B)(i), namely the use, attempted use, or threatened use of violent force capable of causing physical pain or injury to another person.  If the state statute requires the equivalent level of force, then the prior conviction qualifies as a violent felony under the elements clause.  Otherwise, it does not.

The offense of D.C. ADW, codified at D.C. Code § 22-402, consists of four elements:

> (1) "an attempt, with force or violence, to injure another, or a menacing threat, which may or may not be accompanied by a specific intent to injure;" (2) "the apparent present ability to injure the victim;" (3) a general "intent to commit the acts which constitute the assault;" and (4) "the use of a dangerous weapon in committing the assault."

*Spencer v. United States*, 991 A.2d 1185, 1192 (D.C. 2010) (quoting *Williamson v. United States*,

---

[4] Both parties and the Court agree that the statute at issue is not divisible and, as such, the "modified categorical approach" is not applicable here.  Under the modified categorical approach, the Court would be permitted to review certain documents to determine whether a particular offense included an element of violence.  *Sheffield*, 832 F.3d at 314 (citing *Descamps v. United States*, -- U.S. --, 133 S. Ct. 2276, 2283-84 (2013)).

445 A.2d 975, 978-79 (D.C. 1982)). This first three elements constitute a simple assault in D.C. and the fourth element is unique to the crime of ADW.[5] *Id.* Mr. Butler advances two arguments as to why D.C. ADW does not satisfy the elements clause of the ACCA: (1) D.C. ADW can be violated without the use of violent physical force; and (2) D.C. ADW can be violated with a reckless *mens rea*. The Court shall address each in turn.

With respect to the requisite use of force, the Government concedes that D.C. simple assault does not require the use of violent force contemplated by the ACCA because it may be carried out through the mere use of a menacing threat. As such, the Court focuses its analysis on the additional requirement of "the use of a dangerous weapon in committing the assault." While "[n]ot every crime becomes a crime of violence when committed with a deadly weapon," *United States v. Rede-Mendez*, 680 F.3d 552, 558 (6th Cir. 2012), the Court is required to look at the elements of this particular offense. Mr. Butler relies primarily on the definition of a dangerous weapon in D.C., which Mr. Butler asserts is expansive, in support of his argument.

The D.C. Court of Appeals recognized that any object "may constitute a dangerous weapon under an aggravated assault statute when used in a manner likely to cause great bodily harm, and that an object's dangerousness is ordinarily a question for the jury." *In re D.T.*, 977 A.2d 346, 350 (D.C. 2009). Mr. Butler then argues that some objects that would be considered "dangerous weapons" under the statute, like "poison, a tranquilizer, a barrier, and hazardous chemicals," do not require the use of violent, physical force. Def.'s Supp. Mot. at 27. To bolster this position, Mr. Butler points to two cases in which lye was considered a dangerous weapon for the purposes of a conviction under the D.C. ADW statute, *see Tatum v. United States*, 110 F.2d 555, 556 (D.C.

---

[5] Similarly, the D.C. Pattern Jury Instructions describe the elements as (1) simple assault that is (2) carried out with a dangerous weapon. *See* D.C. Crim. Jury Instructions § 4.101.

Cir. 1940); *Sloan v. United States*, 527 A.2d 1277, 1280 (D.C. 1987), and one in which a spray bottle of gasoline was considered a dangerous weapon, *Savage-El v. United States*, 902 A.2d 120, 124-25 (D.C. 2006).

The Government asserts that Mr. Butler's arguments regarding the requisite use of force for the offense of D.C. ADW offense are foreclosed by the D.C. Circuit's recent opinion in *United States v. Redrick*, 841 F.3d 478 (D.C. Cir. 2016). In *Redrick*, the D.C. Circuit held that the Maryland offense of armed robbery qualifies as a violent felony under the elements clause. *Id.* at 485. Similar to the crime at issue here, the D.C. Circuit found in *Redrick* that robbery in Maryland is not a violent felony. *Id.* at 482. However, the D.C. Circuit found that the Maryland offense of *armed* robbery required the "*use* of a dangerous or deadly weapon." *Id.* at 484. Relying on this point, the D.C. Circuit distinguished the Maryland crime from the Massachusetts crime of armed robbery which the United States Court of Appeals for the Ninth Circuit previously held did not constitute a violent felony under the elements clause. *Id.* (citing *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016)). The D.C. Circuit in *Redrick* noted that the Massachusetts statute, unlike the Maryland offense, did not require the "use" of a dangerous or deadly weapon in that the victim did not even need to be aware of the presence of the weapon.[6] *Id.* The D.C. Circuit found the Maryland offense distinguishable because of the requirement of the "use" of the weapon. *Id.*

The D.C. Circuit also focused on the type of weapon that would constitute a dangerous or deadly weapon for the purposes of the crime of Maryland armed robbery. The Maryland offense

---

[6] Unlike the Massachusetts statute, the D.C. ADW offense at issue here considers the circumstances as viewed from the perspective of the victim. *See Perry v. United States*, 36 A.3d 799, 811 (D.C. 2011) (quoting *Sousa v. United States*, 400 A.2d 1036, 1044 (D.C. 1979)) ("It is not the secret intent of the assaulting party, nor the undisclosed fact of his ability or inability to commit a battery that is material, but what his conduct and the attending circumstances denote at the time to the party assaulted.").

indeed has a more extensive definition that that provided for D.C. ADW. Specifically, a "deadly or dangerous weapon" for the crime of Maryland armed robbery is defined as an instrument:

> "(1) designed as 'anything used or designed to be used in destroying, defeating, or injuring an enemy, or as an instrument of offensive or defensive combat'; (2) under the circumstances of the case, immediately useable to inflict serious or deadly harm (e.g., unloaded gun or starter's pistol useable as a bludgeon); *or* (3) *actually used in a way likely to inflict that sort of harm (e.g., microphone cord used as a garrote)*."

*Id.* at 484 n.6 (quoting *Brooks v. State*, 552 A.2d 872, 880 (Md. 1989)) (emphasis added). In *Redrick*, the D.C. Circuit rejected the defendant's argument that the conduct covered swept too broadly because the weapon at issue could include poison, an open flame, or a lethal bacteria. *Id.* at 484. The D.C. Circuit noted first that it "doubt[ed] these weapons could be administered without at least some level of physical force," and ultimately found "the hypotheticals . . . too farfetched to give . . . [the court] pause." *Id.*

The D.C. Circuit's opinion in *Redrick* is instructive in this Court's analysis for a number of reasons. First, both Maryland robbery and D.C. assault (without the use of a weapon) are not violent felonies under the elements clause of the ACCA because they do not require the requisite use of physical force. Second, both Maryland robbery and D.C. assault are necessarily crimes against a person. *See id.* Third, both Maryland *armed* robbery and D.C. ADW have an element requiring the *use* of a dangerous weapon (the Maryland offense also allows for use of a "deadly" weapon). Finally, while the Maryland offense of armed robbery has a lengthier definition of what constitutes a "deadly or dangerous weapon," the last provision of the definition is similar to the definition used for the D.C. ADW offense. Indeed, the Maryland definition includes an instrument "actually used in a way likely to inflict that sort of harm [serious or deadly] (e.g., microphone cord used as a garrote)," and the D.C. definition is an object "used in a manner likely to cause great bodily harm."

Mr. Butler makes two arguments as to why the D.C. Circuit's decision in *Redrick* is distinguishable. First, Mr. Butler asserts that the D.C. definition of a dangerous weapon sweeps more broadly than that of the Maryland definition. The Court rejects this argument based on the third clause of the Maryland definition which the Court finds substantially similar to the D.C. definition as described above. Second, Mr. Butler asserts that that there is a realistic probability that D.C. ADW, unlike Maryland armed robbery, would be accomplished through the use of materials requiring less than violent physical force. Indeed, as previously discussed, Mr. Butler relies on the cases in which D.C. ADW convictions were supported through the use of lye and gasoline. The Court agrees with Mr. Butler that unlike the Maryland offense of armed robbery, it is far more likely that an assault with a dangerous weapon would be accomplished through the use of an object like a poison that could be administered without the use of violent physical force as required under the ACCA.[7] *C.f. Brown*, No. CR 09-358 (EGS), 2017 WL 1383640, at *7 (finding that the North Carolina offense of assault with a deadly weapon with intent to kill was not a violent felony under the ACCA's elements clause because at least one case reflected a conviction based on a secret poisoning). As such, the Court agrees that a person could be convicted of D.C. ADW without using the requisite violent, physical force necessary to qualify as a violent felony under the ACCA.

Turning next to the issue of the requisite *mens rea*, the parties agree that reckless conduct is sufficient to support a conviction for D.C. ADW. *Vines v. United States*, 70 A.3d 1170, 1180 (D.C. 2013), *as amended* (Sept. 19, 2013) ("[A] conviction for ADW can be sustained by proof of

---

[7] While the Government relies on the Supreme Court's holding in *Castleman* to support its position, *Castleman* addresses the common law use of force, not the higher level of force required under the ACCA and, accordingly, is distinguishable. *See United States v. Castleman*, -- U.S. --, 134 S. Ct. 1405, 1410, 1414-15 (2014).

reckless conduct alone.").  However, the parties disagree as to whether a violent felony under the elements clause includes offenses that can be accomplished recklessly, meaning without the *intentional* use, attempted use, or threatened use of violent force.  This appears to be an open issue in this jurisdiction.

Three Supreme Court cases addressing similarly worded provisions of two different statutes are of particular importance in reaching a decision on this issue.  In 2004, the Supreme Court addressed whether a conviction in Florida for driving under the influence of alcohol and causing serious bodily injury classified as a "crime of violence" under 18 U.S.C. § 16(a), which defines a crime of violence in a similar manner as the elements clause of the ACCA.  *Leocal v. Ashcroft*, 543 U.S. 1, 4-5 (2004).[8]   As the Supreme Court explained, it granted certiorari in that case "to resolve a conflict among the Court of Appeals on the question whether state DUI offenses similarly to the one in Florida, which either do not have a *mens rea* component or require only a showing of negligence in the operation of a vehicle, qualify as a crime of violence."  *Id.* at 6.  The Supreme Court found that "[t]he key phrase in § 16(a)—the 'use . . . of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct."  *Id.* at 8.  As such, the Supreme Court held that the defendant's conviction did not qualify as a crime of violence under § 16(a).  *Id.*  However, the Supreme Court specifically noted that the case did not involve the question of whether a state statute requiring proof of the *reckless*, rather than negligent, use of force against a person or property qualified as a crime of violence under § 16.  *Id.* at 13.

In 2014, the Supreme Court addressed the meaning of the phrase "the use . . . of physical

---

[8] At issue in that case was whether the defendant had committed an "aggravated felony" under the Immigration and Nationality Act ("INA"), which adopted the definition of a crime of violence under § 16, rendering him deportable.  *Leocal*, 543 U.S. at 4.

force," as referenced in 18 U.S.C. § 922(g)(9), which prohibits a person convicted of a misdemeanor crime of domestic violence from possessing a firearm. *United States v. Castleman*, -- U.S. --, 134 S. Ct. 1405, 1408-09 (2014). In that case, the Supreme Court considered the Tennessee offense of assaulting a family or household member, which incorporated by reference a Tennessee statute defining assault. *Id.* at 1413. The Supreme Court noted that not every type of assault in the statute involved the use or attempted use of physical force or the threatened use of a deadly weapon as required under § 922(g)(9). *Id.* at 1413-14. Indeed, the Court noted that "the merely reckless causation of bodily injury under . . . [a provision of the Tennessee assault statute] *may not* be a 'use' of force." *Id.* at 1414 (emphasis added). However, the Supreme Court did not reach a decision on this issue because the Court found that the statute was divisible and, employing the modified categorical approach, found that the defendant violated a different provision of the statute that required the knowing or intentional application of force. *Id.* In a footnote, the Supreme Court referenced its 2004 decision discussed above, noting that it expressly reserved the question of whether the reckless application of force constituted the "use" of force. *Id.* at 1414 n.8. However, the Court noted that "the Court of Appeals have almost uniformly held that recklessness is not sufficient." *Id.*

In 2016, the Supreme Court again discussed § 922(g)(9), but in this instance addressed the issue of "whether misdemeanor assault convictions for reckless (as contrasted to knowing or intentional) conduct trigger the statutory firearms ban." *Voisine v. United States*, -- U.S. --, 136 S. Ct. 2272, 2276 (2016). In that case, the Supreme Court held that a "misdemeanor crime of violence," which requires that the offense have "as an element, the use or attempted use of physical force," includes assault convictions in the domestic context for reckless conduct. *Id.* at 2278. In reaching this holding the Court considered the definition of the word "use," *id.* at 2278-80, and the

legislative history of § 922(g)(9), *id.* at 2280-82. However, the Supreme Court expressly left open the question of whether the reckless use of force would be sufficient to meet the requirements of a "crime of violence" under 18 U.S.C. § 16(a). *Id.* at 2279-80. In a footnote, the Supreme Court referenced § 922(g)(9) and § 16(a), noting "[c]ourts have sometimes given those two statutory definitions divergent readings in light of the differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states." *Id.* at 2280 n.4. With respect to its 2004 decision described above, the Court noted "[a]ll we say here is that . . . [the] exclusion of accidental conduct [in the earlier decision] from a definition hinging on the 'use' of force is in no way inconsistent with our inclusion of reckless conduct in a similarly worded provision." *Id.* As such, the issue remains open as to whether a reckless application of force is sufficient to meet the requirements of the elements clause of the ACCA. The Government urges the Court to apply the Supreme Court's ruling regarding § 922(g)(9) to the instant issue and Mr. Butler seeks to distinguish this holding.

Two district court judges in this jurisdiction have sided with Mr. Butler's argument that a statute requiring only the reckless application of force does not meet the requirements of the ACCA's elements clause. Indeed, District Judge James E. Boasberg recently accepted this argument at a sentencing hearing and held that D.C. ADW does not constitute a violent felony under the elements clause of the ACCA because it covers reckless conduct.[9] *U.S. v. Haight*, Case No. 1:15-cr-00088 (D.D.C.), Sent'g Hrg. Tr. (Dec. 1, 2016), at 3-8, ECF No. [106]. Further, District Judge Emmet G. Sullivan recently addressed the North Carolina crime of assault with a deadly weapon with intent to kill and reached a similar conclusion. *Brown*, No. CR 09-358 (EGS),

---

[9] The Government's appeal of this sentence currently is being briefed before the D.C. Circuit. *U.S. v. Haight*, Case No. 17-3002 (D.C. Cir.) (filed Jan. 23, 2017).

2017 WL 1383640, at *7-*9. Judge Sullivan noted that the majority of courts to reach this issue have found a conviction that only requires a *mens rea* of recklessness does not satisfy the elements clause of the ACCA. *See id.* at *7 (citing *Bennett v. United States*, Nos. 94–11, 16–251, 2016 WL 3676145, at *3 (D. Me. July 6, 2016) (collecting cases)). While the state statute at issue in that case is distinguishable in that it merely required culpable or criminal negligence, rather than recklessness, Judge Sullivan's analysis remains persuasive. *Id.* at *9.

Specifically, as noted by Judge Sullivan, the Supreme Court previously defined "force" as used in the ACCA and in § 922(g)(9) in different manners. *Id.* at *8. In *Johnson* (2010), with respect to violent felonies, the Supreme Court held that the violent application of force was required to satisfy the elements clause of the ACCA. *Johnson* (2010), 559 U.S. at 140. However, with respect to misdemeanor crimes of domestic violence, the Supreme Court, applying the common law definition, held that a mere offensive touching was sufficient to satisfy the force requirement of § 922(g). *Castleman*, 134 S. Ct. at 1410. The Supreme Court explained this distinction by noting that: (1) perpetrators of domestic violence are routinely prosecuted under assault or battery laws; (2) "domestic violence" is a term of art that encompasses acts that may not be considered violent in a nondomestic context; (3) section 922(g) sets forth several different criteria that preclude a person from gun ownership, only one of which deals with prior convictions for domestic violence offenses; and (4) to exclude misdemeanors that include mere offensive touching from the definition of force in § 922(g) would render the provision inoperative in many states. *Id.* at 1410-13. Here, the rationale provided for distinguishing the level of force required to satisfy similarly worded statutes appears to support the conclusion that a higher level of *mens rea* is required to violate the ACCA when the purpose of the ACCA is to determine whether certain defendants should be classified as armed career criminals based on their prior *felony* convictions

and subjected to a 15-year mandatory minimum. Indeed, Judge Sullivan found the mere "linguistic similarity" between § 922(g) and the elements clause of the ACCA does not necessarily mean that reckless conduct is sufficient to satisfy the latter. *Brown*, No. CR 09-358 (EGS), 2017 WL 1383640, at *8. Rather, Judge Sullivan was persuaded that "[t]he primary reason for the difference between the holdings . . . seems to be that the Supreme Court has concluded that 'when Congress defines a misdemeanor, it intends a lower bar for culpability than when it defines a felony, even when it uses some of the same words to describe both types of offenses.'" *Id.* (quoting *United States v. Sabetta*, No. 00-CR-135-S-PAS, 2016 WL 6157454, at *9 (D.R.I. Oct. 24, 2016), *reconsideration denied*, No. 00-CR-135-S-PAS, 2016 WL 7174618 (D.R.I. Dec. 8, 2016)). "Thus, 'the lower *mens rea* sufficient for a predicate misdemeanor is not necessarily sufficient for a violent *felony*.'" *Id.* (quoting *Sabetta*, No. 00-CR-135-S-PAS, 2016 WL 6157454, at *9). The Court is persuaded by this line of reasoning.

The Court agrees that a state statute that requires the mere reckless application of force, such as D.C. ADW, does not meet the requirements of the elements clause of the ACCA. The Court notes that in reaching this conclusion, it reaches a contrary holding to some other courts addressing this issue. *See, e.g.*, *United States v. Howell*, 838 F.3d 489, 501-02 (5th Cir. 2016), *cert. denied* 137 S. Ct. 1108 (2017) (holding that the mental state of recklessness is sufficient for an offense to qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(1)); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016), *cert. denied* No. 16-7767, 2017 WL 468441 (U.S. May 15, 2017) (finding that reckless conduct constitutes the use of force under the ACCA). For the reasons described, the Court has determined that Mr. Butler has only one, not three, qualifying convictions and, as such, is entitled to be resentenced because he was improperly subjected to a 15-year mandatory minimum sentence pursuant to § 924(e).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Mr. Butler is entitled to have his sentence corrected. Specifically, the Court finds that Mr. Butler's two prior convictions for the D.C. offense of ADW do not qualify as violent felonies under the ACCA and, as such, Mr. Butler should not have been subject to the 15-year mandatory minimum sentence as part of the plea agreement in light of the Supreme Court's holding in *Johnson* (2015). The Court shall reserve ruling on Mr. Butler's arguments related to the U.S.S.G. until resentencing. Accordingly, Mr. Butler's [31] Revised Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, and Mr. Butler's [33] Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255 are GRANTED.

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE